IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE KARAS

08 CV 0321

JOSE NIEVES and COLLIN DEWAR on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COMMUNITY CHOICE HEALTH PLAN OF WESTCHESTER, INC., MOUNT VERNON NEIGHBORHOOD HEALTH CENTER, INC. and SOUND SHORE MEDICAL CENTER OF WESTCHESTER, INC.,

Defendants.

**CLASS ACTION COMPLAINT**
**and**
**JURY TRIAL DEMAND**

FILED
U.S. DISTRICT COURT
2008 JAN 14 PM 1:59
S.D. OF N.Y.

Plaintiffs Jose Nieves and Collin Dewar ("Plaintiffs") on behalf of themselves and a class of those similarly situated, by way of complaint against Community Choice Health Plan of Westchester, Inc., Mount Vernon Neighborhood Health Center, and Sound Shore Medical Center of Westchester, Inc., (hereinafter referred to as "Defendants") by and through their counsel allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for collection of unpaid wages and benefits for sixty (60) calendar days pursuant to the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"), 29 U.S.C. §§ 2101-2109 et. seq. Although the Plaintiffs and the other similarly situated former employees were on the payroll of Community Choice Health Plan of Westchester, Inc., all of the Defendants consisted a "single employer" under the WARN Act. As such, each the Defendants are liable under the WARN Act for Defendants' failure to provide the Plaintiffs and the other similarly situated former employees at least 60 days' advance notice of termination, as required by the WARN Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. The violation of the WARN Act alleged herein occurred in this District.

4. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

***Plaintiffs***

5. Plaintiff Jose Nieves was employed by Defendant Community Choice Health Plan of Westchester, Inc., and worked at the Defendants' facility located at 30 South Broadway, Yonkers, NY 10701 (the "Facility") until his termination on or about November 30, 2007.

6. Plaintiff Collin Dewar was employed by Defendant Community Choice Health Plan of Westchester, Inc., and worked at the Facility until his termination on or about November 30, 2007.

***Defendants***

7. Upon information and belief, at all relevant times, Defendant Community Choice Health Plan of Westchester, Inc. (CCHP) was a not-for-profit New York corporation that maintained and operated a facility at 30 South Broadway, Yonkers, NY, 10701.

8. Upon information and belief, at all relevant times, Defendant Mount Vernon Neighborhood Health Center (MVNHC) was a New York corporation that maintained and operated a hospital at 107 West Fourth Street, Mount Vernon, NY 10550.

9. Upon information and belief, at all relevant times, Defendant Sound Shore Medical Center of Westchester, Inc. (SMMC) was a New York corporation that maintained and operated a hospital at 16 Guion Place, New Rochelle, NY, 10801.

*10.* Upon information and belief, Defendants, as a single employer, owned and operated CCHP until on or about November 30, 2007.

*11.* Until on or about November 30, 2007, the Plaintiffs and all similarly situated employees were employed by Defendants and worked at or reported to one of the Facility.

*12.* On or about November 30, 2007, Defendants, as a single employer, terminated the Plaintiffs' employment as part of a mass layoff or a plant closing as defined by 29 U.S.C. § 2101 (a)(2), (3), for which they were entitled to receive 60 days advance written notice under the WARN Act.

*13.* At or about the time the Plaintiffs were terminated, Defendants terminated approximately 120 other similarly situated employees at the Facilitiy.

*14.* Pursuant to 29 U.S.C. § 2101 (a)(2), (3), the Plaintiffs maintain this action on behalf of themselves and on behalf of each of the other similarly situated former employees.

*15.* Each of the other similarly situated former employees is similarly situated to the Plaintiff in respect to his or her rights under the WARN Act.

*16.* Defendants were required by the WARN Act to give the Plaintiffs and the other similarly situated former employees at least 60 days advance written notice of their respective terminations.

*17.* Prior to their termination, neither the Plaintiffs nor the other similarly situated former employees received written notice that complied with the requirements of the WARN Act.

*18.* Defendants failed to pay the Plaintiff and the other similarly situated former employees their respective wages, salary, commissions, bonuses, accrued holiday pay and

accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

*19.* Plaintiffs sue under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of themselves, and a class of persons who worked at or reported to one of the Defendants' Facilities and were terminated without cause on or about November 30, 2007, were terminated without cause within 30 days of November 30, 2007, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendants on or about November 30, 2007, and who are affected employees, within the meaning of 29 U.S.C. § 2101 (a)(5) (the "Class").

*20.* The persons in the Class identified above ("Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculations of that number can be based are presently within the sole control of Defendants.

*21.* There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

*22.* The claims of the representative party are typical of the claims of the Class.

*23.* The representative party will fairly and adequately protect the interests of the class.

*24.* The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

*25.* A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation,

where individual plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

26. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a) Whether the Class Members were employees of Defendants who worked at or reported to Defendants' Facility; and

(b) Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice.

(c) Whether any defenses excusing an employer from giving 60 days notice are applicable.

**CLAIM FOR RELIF**

27. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

28. At all relevant times, the Defendants employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by 20 U.S.C. § 2101 of WARN and employed more than 50 employees at its Facility.

29. At all relevant times, each of the Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of WARN and 20 C.F.R. § 639.3(a).

30. On information and belief, CCHP was formed by a partnership of Defendants MVNHC and SSMC in compliance with the Medicaid Reform Act.

31. On information and belief, Defendants MVNHC and SSMC controlled a majority of the board of CCHP, sufficient to exercise control over CCHP's labor and employee relations and labor policy decisions.

32. The Defendants constituted a "singled employer" of the Plaintiffs and the Class Members in that, among other things:

(a) The Defendants shared common ownership;

(b) The Defendants shared common officers and directors;

(c) All of the Defendants exercised de facto control over the labor practices governing the Plaintiffs and Class members, including the decision to order the layoffs of Plaintiffs and Class Members.

33. On or about November 30, 2007, the Defendants ordered a "mass layoff" or "plant closing," as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

34. Defendants' actions at the Facilities resulted in an "employment loss" as that term is defined by 29 U.S.C. §2101(a)(2) for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

35. Defendants' permanent termination of the Employees constituted a "Mass Layoff" or "Plant Closing" as defined by the WARN Act.

36. The Plaintiffs who were employed by Defendants and then terminated by Defendants as a result of Defendants executing a mass layoff at the Facility on or about November 30, 2007 were "affected employees" as defined by 29 U.S.C. § 2101 of WARN.

37. The Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2101 (a)(7).

38. Pursuant to Sections 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 et. seq., Defendants were required to provide at least 60 days prior written notice of the termination, or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

39. Defendants failed to give at least sixty (60) days prior notice of the termination in violation of WARN.

40. The Defendants failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

41. As a result of Defendants' failure to pay the wages, benefits and other monies as asserted in Paragraph 41, the Aggrieved Employees were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

42. WHEREFORE, the Plaintiffs and Class Members demand judgment against the Defendants jointly and severely as follows:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following each employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage

continued for that period, all determined in accordance with the WARN Act, 29 U.S.C§2104(a)(1)(A);

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

c. Interest as allowed by law on the amounts owed under the preceding paragraphs;

d. The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

e. Such other and further relief as this Court may deem just and proper.

Dated: January 8, 2008

Respectfully submitted,

LANKENAU & MILLER, LLP

By: ______________________
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 423
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122

THE GARDNER FIRM
Mary E. Olsen
The Gardner Firm
1119 Government Street
Post Office Drawer 3103
Mobile, AL 36652
P: (251)433-8100

Cooperating Counsel for
THE NLG MAURICE AND JANE SUGAR LAW CENTER FOR ECONOMIC AND SOCIAL JUSTICE, a non-profit law firm
733 St. Antoine, 3rd Floor
Detroit, Michigan 48226
P: (313) 962-6540

*Attorneys for Plaintiffs*