UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE NIEVES and COLLIN DEWAR, on behalf  :
of themselves and all others similarly situated,  :
          Plaintiffs,  :
  :    **MEMORANDUM DECISION**
v.  :
  :    08 CV 321 (VB) (PED)
COMMUNITY CHOICE HEALTH PLAN OF  :
WESTCHESTER, INC., MOUNT VERNON  :
NEIGHBORHOOD HEALTH CENTER, INC.,  :
and SOUND SHORE MEDICAL CENTER OF  :
WESTCHESTER, INC.,  :
          Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiffs Jose Nieves and Collin Dewar filed this class action complaint on January 14,

2008 against defendants Community Choice Health Plan of Westchester, Inc. ("CCHP"), Mount

Vernon Neighborhood Health Center, Inc. ("Mount Vernon"), and Sound Shore Medical Center

of Westchester, Inc. ("Sound Shore").  Plaintiffs allege that defendants, operating as a single

employer, together violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C.

§ 2101 et seq.

      Now pending before the Court is Magistrate Judge Paul E. Davison's Report and

Recommendation ("R&R"), dated August 31, 2011 (Doc. #62), recommending the Court deny

(1) plaintiffs' motion to enforce the parties' settlement agreement; (2) Mount Vernon's cross-

motion to dismiss the complaint; and (3) CCHP's motion for sanctions against Mount Vernon.

Plaintiffs and CCHP have filed objections to the R&R, while Mount Vernon has filed a response

to the objections.  For the following reasons, the Court DENIES all three motions.

**BACKGROUND**

The parties do not dispute Magistrate Judge Davison's recitation of the factual background of this case.  Therefore, the Court assumes familiarity with the case background as set forth in the R&R and will not repeat the facts here.

**DISCUSSION**

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Parties may raise objections to the recommended ruling, but they must be "specific" and "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review.  28 U.S.C. § 636(b)(1)(C); see Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  See Wilds v. UPS, Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).  The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments.  Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

I.      Motion to Enforce Settlement Agreement

Plaintiffs and defendant CCHP object to the R&R insofar as Magistrate Judge Davison recommended the Court not enforce the purported settlement agreement.  In the R&R,

Magistrate Judge Davison applied the four-pronged analysis set forth in Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 323 (2d Cir. 1997) (citing Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d Cir. 1985)), and determined the parties did not intend to be bound by the oral representations and informal agreements contained within emails that had been the basis of their negotiations.

Pursuant to Winston, in determining whether to enforce a settlement in the absence of a written agreement, the court examines the following factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Winston, 777 F.2d at 80. The court examines each of the four factors as no single one is determinative of the outcome. See Edwards v. City of New York, 2009 U.S. Dist. LEXIS 75604, at *5 (E.D.N.Y. Aug. 21, 2009) (citing Ciaramella, 131 F.3d at 323). If, however, a party states its intent not to be bound until the agreement is fully executed, that fact is determinative. Pereira v. Sonia Holdings (In re Artha Mgmt.), 91 F.3d 326, 329 (2d Cir. 1996).

Magistrate Judge Davison determined (1) the presence of a merger clause was evidence the parties did not intend to be bound by any oral agreement or agreements contained within the parties' correspondence they may have reached prior to the execution of a written agreement; (2) the parties' preparation of the settlement documents and the standing down on discovery did not constitute partial performance; (3) because the parties had not yet agreed on a cy pres recipient, there were outstanding issues to be negotiated; and (4) a settlement agreement is the type of agreement which is generally reduced to writing.

3

A.    Express Reservation

Relying on the presence of a merger clause in the draft of the settlement agreement and language in the parties' correspondence from which the Court inferred the need to negotiate terms of the agreement further, Magistrate Judge Davison found that the parties had not intended to be bound until the execution of a written agreement.

Plaintiffs and CCHP object to the R&R on this ground for several reasons.  First, they assert that three of the four parties to the agreement thought they were bound by the provisions agreed to via email and in oral communications.  Second, they point to language in plaintiffs' letters to the Honorable Kenneth M. Karas – to whom this case was previously assigned – stating: "Today, the parties reached agreement on a classwide settlement.  Once the agreement is reduced to writing, the parties expect to have it on file . . . within the next eight weeks."  Third, they state the only expressed reservation by Mount Vernon was a statement concerning authorization from the receiver for CCHP.[1]  In a letter to plaintiffs' counsel, Mount Vernon's counsel wrote, "[B]ecause CCHP is contributing to the settlement, the receiver will need to obtain authorization to settle in that forum."  The objectors' papers make no mention of the presence of the merger clause or grant it any significance, despite the importance case law places on it.

"Parties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time."  Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007).  "The presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement."  Ciaramella v. Reader's Digest Ass'n, 131

---

[1]    In 2007, CCHP was ordered by the New York State Department of Health to cease operations, and a receiver was appointed by the state court to manage CCHP's operations.

F.3d at 324.

The parties' draft settlement agreement dated March 30, 2011 contained a merger clause.

Specifically, paragraph 17 of the draft settlement agreement states:

> This Agreement and the Exhibits hereto represent the entire agreement and understanding between the Parties as to the subject matter hereof and supersedes all previous agreements and discussions between the Parties as to the matters herein addressed.  This Agreement can be amended or modified only in writing and signed by all the Parties hereto, subject to any necessary Court or other approval.

Draft Settlement Agreement, at 7, ¶ 17.  In addition, the draft agreement included the following language:

> NOW, THEREFORE, as material consideration and inducements to the execution of this Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows . . . .

Id. at 4.  Magistrate Judge Davison relied upon this language as well as other language to support his view that the parties' agreement is executed only through the written agreement.  See id., at 7, ¶ 18; at 8, ¶ 21.  These clauses and provisions indicate, regardless of what the parties state now, that they "contemplated the moment of signing as the point when the settlement would become binding."  Ciaramella v. Reader's Digest Ass'n, 131 F.3d at 324.

The Court does not find the case of Schmittgen v. Mooney Airplane Co., Case No. 08-cv-955 (FB) (W.D. Tex.), to be persuasive given the lack of details about this case provided to the Court.  The Court is not aware of the case's posture or whether any settlement agreement in that case was challenged by a party.  Therefore, the Court gives no weight to how that court may have approved a settlement agreement in a case similar to this one.

CCHP argues that Mount Vernon's failure to consummate the agreement was due to its

5

incorrect determination that the agreement could not be executed without authorization from the receiver.  Magistrate Judge Davison found that the text of the draft agreement necessitates a finding that the parties did not intend to be bound absent a written agreement, and the Court agrees.  In making this finding, the Court does not rely on Mount Vernon's incorrect assumption concerning the receiver's authorization, but rather on the language in the parties' draft agreement.  Such language demonstrates the parties' intention to not bind themselves absent execution of the agreement.

In light of the terms of draft agreement, the Court finds the parties did not intend to be bound by any agreement until the execution of a written agreement.  Stated simply, the contemporaneous documents do not indicate the parties' intention at the time of negotiations to be bound by their oral and informal agreements.  Any argument to the contrary is based on ex post facto evidence that attempts to divine the parties' intentions during the negotiations.  The Court adopts Magistrate Judge Davison's recommendation on this issue.

B.    Partial Performance

"A second factor for consideration is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." Ciaramella v. Reader's Digest Ass'n, 131 F.3d at 325.  To have partial performance, there must be some actual performance of the contract, such that plaintiffs conferred something of value upon defendants, which defendants accepted.  Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l, Ltd., 383 F. Supp. 2d 428, 443-444 (S.D.N.Y. 2003).  The objectors assert there was partial performance of the parties' agreement because plaintiffs agreed to "stand down on discovery and prepare the necessary paperwork to gain approval by the CCHP Receiver, and ultimately this Court."

According to the draft agreement, performance by defendants consists only of making a payment to plaintiffs.  No payment was made.  There has been no meaningful act by any of the defendants indicating a partial performance of the agreement.  See Edwards v. City of New York, 2009 U.S. Dist. LEXIS 75604, at *11 (E.D.N.Y. Aug. 21, 2009) (finding that because defendant had not made any payment, there had been no partial performance).

The fact that plaintiff ceased discovery during settlement negotiations does not affect this determination, as "a party's decision not to resume active litigation during settlement discussions does not weigh for or against enforcing the contract."  Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002).  As Magistrate Judge Davison determined, this factor weighs in favor of a finding that the parties did not intend to be bound in the absence of a written agreement.

C.     Terms of the Agreement

The third factor requires the Court to examine "whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to."  R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 76 (2d Cir. 1984).  Regarding this point, the Court of Appeals has stated:

> Although the district court may have correctly assessed the parties' characterizations of the relative importance of the later changes, the facts that such changes were minor and that oral agreement was actually reached on all of the remaining terms does not necessarily lead to the conclusion that the parties were bound prior to these modifications.  Nor does it indicate an intent to give up the right to be bound only upon execution of a formal document. As we noted in R.G. Group, "the actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution.  Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing."  That these "unnoticed" or "passed by" points of disagreement may in the long view be fairly

7

characterized as minor or technical does not mean that a binding contract was formed prior to the time that they were finally worked out.

Winston v. Mediafare Entertainment Corp., 777 F.2d at 82 (citation omitted).

Magistrate Judge Davison relied upon the facts that the parties had not agreed on a cy pres recipient and that CCHP requested additional language be added to the draft regarding its limited liability.  Plaintiffs observe that CCHP had objected to the cy pres recipient, not Mount Vernon, which indicates that the parties did not believe the identification of the recipient was a barrier to the parties' entrance into a formal agreement.  In addition, plaintiffs assert the parties had worked out defendants' respective contributions to the settlement.

The Court disagrees with Magistrate Judge Davison regarding his conclusion that there remained material terms upon which the parties had not reached an agreement and, instead, finds the parties had reached an agreement on all material terms.  The import of this conclusion, however, is minor because the Court finds that this factor weighs only slightly in favor of finding an intention to be bound by the oral agreement.

D.     Type of Agreement

The fourth factor to consider is whether this type of agreement is generally reduced to writing.  The parties concede, as they must, that a settlement agreement – especially in a putative class action – is generally made in writing.  See Ciaramella v. Reader's Digest Ass'n, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."); Winston v. Mediafare Entertainment Corp., 777 F.2d at 83 ("Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation.").  This is especially so where there are three

8

defendants who are not equally liable to plaintiffs.  The settlement agreement was meant "to settle and dispose of claims which are contested and denied and is being entered into . . . avoid the delay, uncertainty, inconvenience and expense of protracted litigation of the disputed claims."  Draft Settlement Agreement, at 8, ¶ 22.  This factor clearly weighs in favor of not enforcing the settlement agreement.  The Court adopts Magistrate Judge Davison's recommendation on this point.

In applying the four Winston factors, the Court concludes that Magistrate Judge Davison was correct in his R&R in determining the parties had not intended to be bound absent a written, signed agreement.  The unexecuted draft agreement and any oral or email agreement are not enforceable.  Accordingly, the Court denies the motion.

II.    Motion for Sanctions

CCHP filed a motion for sanctions against Mount Vernon pursuant to 28 U.S.C. § 1927 and the Court's inherent power to control its docket, in which plaintiffs joined.  Magistrate Judge Davison recommended the Court deny this motion.  Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be liable for costs, expenses, and attorneys' fees incurred because of his conduct.  Sanctions are appropriate under Section 1927 "only when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  Johnson ex rel. United States v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011).

Upon its own independent review of the record, the Court concludes that Mount Vernon did not "unreasonably and vexatiously" multiply these proceedings so as to warrant the imposition of sanctions.  The Court has denied the motion to enforce the settlement agreement. It necessarily follows that Mount Vernon's opposition to the motion and its withdrawal from any

9

settlement negotiations were not so completely without merit as to warrant sanctions.  The Court

agrees with and adopts Magistrate Judge Davison's recommendation.

III.    Motion to Dismiss

        Magistrate Judge Davison recommended the Court deny Mount Vernon's motion to

dismiss.  There is no objection to this recommendation.

        Upon a review of the R&R, the Court finds that Magistrate Judge Davison's

recommendation as to the motion to dismiss was not clearly erroneous.

**CONCLUSION**

        Upon a de novo review of the record, the Court DENIES the motion to enforce the

settlement agreement (Doc. #42).  The Court adopts Magistrate Judge Davison's

recommendation regarding the motion for sanctions and DENIES it (Doc. #52).  In addition, the

Court adopts Magistrate Judge Davison's recommendation as to the motion to dismiss and

DENIES it (Doc. #45).

        The parties are instructed to report for an in-person case management conference on

November 29, 2011 at 11:00 a.m.

        The Clerk of the Court is instructed to terminate the pending motions (Docs. #42, 45, 52)

Dated:  November 10, 2011
        White Plains, New York

                                SO ORDERED:

                                _____
                                Vincent L. Briccetti
                                United States District Judge

10